# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | } | |
| | } | |
| Brandi M. Mandeville, | } | Case No. 17-40777-JJR |
| | } | Chapter 13 |
| Debtor. | } | |

## MEMORANDUM OPINION AND ORDER

Carrington Mortgage Services, LLC ("Carrington") holds a mortgage (the "Mortgage") on the Debtor's residence (the "Mortgaged Property").[1] The Mortgage secures the Debtor's Note in the original principal amount of $141,112 (the "Note"). Carrington filed a proof of claim in the Debtor's chapter 13 bankruptcy case for the prepetition Mortgage debt, and now seeks to recover the additional fees paid to its attorneys for their postpetition legal work. The Debtor objects and argues that the claim for postpetition attorney's fees should not be allowed.

I – Background

The Debtor filed two back-to-back cases for relief under chapter 13 of the Bankruptcy Code[2] in the spring of 2017. Her first case (case no. 17-01226; the "First Case") was dismissed after a show-cause hearing because of deficient schedules. (First Case Docs. 8, 29.) The Debtor

---

[1] According to the attachments to Carrington's proof of claim, the Mortgage was originally made in favor of MERS as nominee for Taylor, Bean & Whitaker Mortgage Corp. The Mortgage was assigned to Bank of America, N.A. and thereafter to Carrington, its present holder.

[2] 11 U.S.C. § 101, *et seq.*, and herein referred to as the "Code." The symbol "§" refers to a section or other subdivision of the Code.

filed the instant case four days later, and in her proposed chapter 13 plan (Doc. 2), which was eventually confirmed, she acknowledged she was thirteen months behind on her Mortgage installments. She proposed to pay the thirteen delinquent installments and her on-going monthly Mortgage payments under the plan, through the trustee. It was obvious that her bankruptcy filings were attempts to save her home from foreclosure.[3]

Pursuant to Rules 3001 and 3002 of the Federal Rules of Bankruptcy Procedure,[4] Carrington, through its attorney, filed a timely proof of claim (amended claim #8 and herein, the "POC") in which it listed the amounts due on the petition date under the Note and Mortgage, including principal, interest, prepetition fees and charges, escrow deficiency, and a calculation of the prepetition arrearage. Copies of the Note and the Mortgage were filed with the POC. The Debtor did not object to the POC. Soon after filing its POC, Carrington, also through its attorney, filed a Notice of Postpetition Mortgage Fees, Expenses, and Charges pursuant to Rule 3002.1(c) (the "Postpetition Fee Notice"), claiming an additional $600 for attorney's fees; $300 for the First Case and a like amount for the instant case.[5] The Debtor filed a Motion for Determination of Fees, Expenses, or Charges Pursuant to Rule 3002.1(e) (Doc. 55 and herein, the "Motion") in which she objected to the allowance of the additional fees. Carrington responded to the Motion, and relied almost exclusively on the language of Rule 3002.1 as authorizing the additional fees. (Doc. 62.) The Debtor filed a brief in support of her Motion (Doc. 75), arguing that the Mortgage

---

[3] The Account Activity Description (column E) attached to Carrington's Proof of Claim (identified *infra*) listed numerous foreclosure-related events occurring during the months immediately preceding the Debtor's bankruptcy filings: 10/7/2016 Fcl Attorney Fees; 11/3/2016 Fcl Title Fees; 11/9/2016 Fcl Proceedings Costs; 11/16/2016 Fcl Certified Mail; 1/18/17 Fcl Certified Mail; 1/25/2017 Fcl Posting of Sale. The court assumed "Fcl" was an abbreviation for foreclosure.

[4] Together referred to as the "Rules" and individually as a "Rule."

[5] Respondent's (Carrington's) Exhibit 2.

did not authorize the assessment of attorney's fees for a simple chapter 13 case. Additionally, she argued that employing an attorney for plan review and filing a proof of claim was unnecessary and the amount of the fees was unreasonable. The court conducted an evidentiary hearing, and then took the matter under advisement.

II – <u>Legal Services Performed by Carrington's Attorney</u>

At the evidentiary hearing Carrington's attorneys, through testimony and proffer, described the legal services they and their law firm performed with respect to the Debtor's bankruptcy case. Immediately after being retained by Carrington, they accessed the Debtor's case through PACER[6] and created a file. They reviewed the petition, schedules, and other related bankruptcy documents, including the Debtor's proposed chapter 13 plan. The plan was scrutinized for its intended treatment of the Mortgage. Carrington provided them with copies of the Note and Mortgage along with the Debtor's loan history and account balances. They reviewed the Note and Mortgage, the loan history and account information, and then signed and filed the POC along with supporting documents and required attachments.[7] Thereafter, the firm monitored the case, reviewing all

---

[6] Public Access to Court Electronic Records.

[7] Either the POC was initially drafted in-house by Carrington and then sent to its attorneys who reviewed it for accuracy and compliance with the Code and Rules, or the POC was prepared from scratch by the attorneys. Regardless, the POC was signed by the attorneys and their address was shown as that for notices to Carrington. Significantly, when the attorneys signed the POC, they made the following representations under Part 3:

> I understand that an authorized signature on this Proof of Claim serves as an acknowledgement that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

> I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

events, looking for those that might affect Carrington's interest as mortgagee. The firm charged a flat fee of $300, the same amount it charged for all Carrington's chapter 13 cases. The fee was negotiated based on competitive bidding with other firms. The same law firm prepared and filed the Postpetition Fee Notice for Carrington.[8]

III - Jurisdiction

This is a contested matter under Rule 9014 to determine whether attorney's fees incurred postpetition in a chapter 13 case by a creditor holding a claim secured by a mortgage encumbering a debtor's principal residence are allowable under Rule 3002.1(e). Thus, this is a core proceeding under 28 U.S.C. § 157(b)(2)(B)—allowance or disallowance of claims against the estate—and the court may enter a final order herein. Both parties have participated fully in the litigation of this matter without challenging the jurisdiction of this court to enter final orders and have thus consented to the same.

IV - Rule 3002.1

Rule 3002.1 was added to the Rules by the 2011 Amendments and provides a procedure for notice of payment changes in residential mortgage claims during the pendency of a chapter 13 case, and important to the court's decision in this matter, it also prescribes the procedure for a

---

I declare under penalty of perjury that the foregoing is true and correct.

*See also* Rule 9011(b).

[8] Whether additional attorney's fees may be charged for preparing, filing, and defending the Postpetition Fee Notice pursuant to Rule 3002.1(c) is not an issue before the court.

mortgage creditor to augment its claim to include the fees, expenses, and other charges incurred

postpetition. As it pertains to the matter now before the court, Rule 3002.1 reads as follows:

> *(a) In General.* This rule applies in a chapter 13 case to claims (1) that are secured by a security interest in the debtor's principal residence, and (2) for which the plan provides that either the trustee or the debtor will make contractual installment payments. . . .
>
> \* \* \* \* \*
>
> *(c) Notice of Fees, Expenses, and Charges.* The holder of the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice itemizing all fees, expenses, or charges (1) that were incurred in connection with the claim after the bankruptcy case was filed, and (2) that the holder asserts are recoverable against the debtor or against the debtor's principal residence. The notice shall be served within 180 days after the date on which the fees, expenses, or charges are incurred.
>
> \* \* \* \* \*
>
> *(e) Determination of Fees, Expenses, or Charges.* On motion of the debtor or trustee filed within one year after service of a notice under subdivision (c) of this rule, the court shall, after notice and hearing, determine whether payment of any claimed fee, expense, or charge is *required by the underlying agreement and applicable nonbankruptcy law* to cure a default or maintain payments in accordance with § 1322(b)(5) of the Code.

Rule 3002.1 (emphasis added).

"Upon a debtor filing a motion to determine mortgage fees, expenses, and charges pursuant

to § 1322(e), the Court must look to the underlying agreement and applicable nonbankruptcy law

to determine if the amounts are permissible. The 'reasonableness standard' applied under § 506(b)

challenges does not apply to postpetition fees, expenses, and charges necessary to cure a default

as § 1322(e) explicitly excepts § 506(b) from consideration. Instead, the underlying agreement

and applicable nonbankruptcy law are determinative. Fed. R. Bankr. P. 3002.1(e)." *In re England*,

586 B.R. 795, 799 (Bankr. M.D. Ala. 2018). The Debtor's Mortgage in this case provides in

paragraph 14 that it "shall be governed by federal law and the law of the jurisdiction in which the

Property is located." The Mortgaged Property is located in St. Clair County, Alabama.

5

V - <u>Alabama Law</u>

The decisions by the Supreme Court of Alabama are long-standing and unequivocal: Provisions in mortgages that allow a mortgagee to recover attorney's fees incurred in connection with, *inter alia*, collecting the mortgage debt, foreclosure proceedings, and actions taken to protect the mortgagee's intertest in the mortgaged property are valid and binding, and if the mortgage so provides, such fees are additional obligations secured by the mortgage. *Johnson v. U.S. Mortg. Co.*, 991 F. Supp. 1302, 1307 (M.D. Ala. 1997) (*quoting Taylor v. Jones,* 290 Ala. 268 (1973) (*citing Hylton v. Cathey,* 225 Ala. 605 (1932))). If a mortgage allows attorney's fees to be charged, the fees must nonetheless be reasonable; reasonableness should be determined on a case-by-case basis. *In re England*, 586 B.R. at 800-01 (discussing the attorney-fee-reasonableness standard under Alabama law, citing Rule 1.5 of the Alabama Rules of Professional Conduct and noting that the factors to be considered are almost identical to those adopted by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974),[9] a

---

[9] Factors for consideration under Alabama Rules of Professional Conduct Rule 1.5 are:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) The fee customarily charged in the locality for similar legal services;
(4) The amount involved and the results obtained;
(5) The time limitations imposed by the client or by the circumstances;
(6) The nature and length of the professional relationship with the client;
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services;
(8) Whether the fee is fixed or contingent; and
(9) Whether there is a written fee agreement signed by the client.

Ala. R. Prof. Conduct 1.5.

decision that remained binding precedent in the Eleventh Circuit after it split from the Fifth).[10]

## VI - Mortgage Provisions Allowing Recovery of Mortgagee's Expenses

The Note and Mortgage are on preprinted, fill-in-the-blank forms containing terms that apparently are prescribed by the Secretary of Housing and Urban Development ("HUD") for mortgages intended to be insured by the Federal Housing Administration ("FHA").[11]   The provisions in the Mortgage that address expenses and disbursements paid by the mortgagee are found in paragraphs 7 and 8, and to the extent they are pertinent to this matter, read as follows:

> **7.   Charges to Borrower and Protection of Lender's Rights in the Property.**   Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2.   Borrower shall pay these obligations on time directly to the entity which is owed the payment.   If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing those payments.[[12]]
>
> If Borrower fails to make . . . the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this [Mortgage] or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in *bankruptcy*, for condemnation or to enforce laws

---

[10] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions issued prior to the close of business on September 30, 1981.

[11] *See, e.g.,* Mortgage ☐☐ 2, 3, 8, 9(b), 9(d), 9(e), 18. "Alabama FHA Mortgage" is printed at the lower left-hand corner on each page of the Mortgage, and "Multistate FHA Fixed Rate Note" is printed and at the same location on each page of the Note.   Paragraph 9(e) of the Mortgage provides that if the "[Mortgage] and the Note are not determined to be eligible for insurance under the National Housing Act within eight months . . . the Lender may, at its option, require immediate payment in full of all sums secured by the [Mortgage]."

[12] Paragraph 2 of the Mortgage, entitled "Monthly Payment of Taxes, Insurance, and Other Charges," describes the Debtor's obligations to pay the monthly principal and interest installments, taxes, late charges, casualty insurance and mortgage insurance, and maintain an escrow account to pay taxes and insurance.

or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property [emphasis added]. . . .

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this [Mortgage]. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of the Lender shall be immediately due and payable . . . .

**8.** **Fees.** Lender may collect fees and charges authorized by [HUD].

## VII – HUD Authorized Fees and Charges

Congress directed HUD to promulgate rules and regulations pertaining to federally-insured mortgages. 12 U.S.C. § 1715b. And as quoted above, paragraph 8 of the Mortgage provides that "Lender may collect fees and charges authorized by [HUD]." "Where HUD rules and regulations are incorporated into an insured mortgage, they are binding upon both the mortgagor and mortgagee." *In re Ruiz*, 501 B.R. 76, 79 (Bankr. E.D. Penn. 2013) (citing *Application of Fleetwood Acres, Inc.* 186 Misc. 299, 303, 62 N.Y.S. 2d 669,673 (1945)). Pursuant to HUD regulations, "(a) The mortgagees may collect reasonable and customary fees and charges from the mortgagor . . . . [including] (13) [w]here permitted by the [mortgage], attorney's fees and expenses actually incurred in defense of any suit or legal proceeding wherein the mortgagee shall be made a party thereto by reason of the mortgage . . . ." 24 C.F.R. § 203.552(a). In one of its many Mortgagee Letters, HUD stated, "With respect to non-foreclosure fees and expenses, including *bankruptcy*, in accordance with 24 CFR 203.552(a)(13) [quoted in part, *supra*] the mortgagee may collect reasonable and customary fees and charges from the mortgagor after insurance endorsement, where permitted by the [mortgage] for attorney's fees and expenses actually incurred in defense of any suit or legal proceedings. This is true whether or not the mortgagee has made a decision to foreclose prior to incurring the expense." Mortgagee Letter 93.30 (HUDML), 1993 WL 13009705 (the "1993 HUD Letter") (emphasis added).

8

The latest HUD authorization regarding the collection of fees and charges for FHA-insured mortgages is found in HUD's Mortgagee Letter 2016-03 dated February 5, 2016 (Doc. 80 and herein, the "2016 HUD Letter"), addressed to "All Approved Mortgagees."[13] On its first page, the 2016 HUD Letter stated that it provided an updated Schedule of Attorney Fees, effective for all cases in which certain actions occurred on or after January 1, 2016, including "a bankruptcy clearance is undertaken." The 2016 HUD Letter stated that:

> When a mortgagor files for *bankruptcy* after the initiation of foreclosure, an automatic extension of the Reasonable Diligence timeframe [2016 HUD Letter p. 2] for foreclosure and acquisition of the property are granted provided:
> - The mortgagee ensures that all necessary *bankruptcy*-related legal actions are handled in a timely and effective manner;
> - *The case is promptly referred to a bankruptcy attorney after the bankruptcy is filed* ; and
> - The mortgagee monitors the action to ensure that the case is timely resolved.
>
> The timeframe allowed for recommencing foreclosure will vary based on the Chapter under which the *bankruptcy* is filed as provided below:
> - For Chapter 7 bankruptcy, HUD automatically grants an extension through the date that is 90 days after the date of the release of stay;
> - For Chapter 11, 12, or *13 bankruptcies*, HUD automatically grants an extension through the date that is 90 days from the date that the payments under the *Bankruptcy Plan* become 60 days delinquent.

---

[13]   https://www.hud.gov/program_offices/administration/hudclips/letters/mortgagee/2016 (last visited Jan. 28, 2019). The parties referred to the 2016 HUD Letter at the hearing, and at the court's request Carrington submitted it for the court's consideration via email, with a copy to the Debtor's attorney. The trustee agreed at the hearing that the HUD guidance was used routinely by creditor firms in setting fees and agreed that the letter should be made part of the record. The Debtor objected to the court's consideration of the 2016 HUD Letter for any purpose other than as establishing HUD's maximum allowable fee and argued that nothing in the 2016 HUD Letter actually authorized the collection of attorney's fees in this case. The court agrees that it is the Mortgage and applicable nonbankruptcy law, not the 2016 HUD Letter in isolation, that controls whether the fees are properly added to the Mortgage debt. The Mortgage, however, specifically incorporated the fees authorized by HUD, which are set out in detail in the 2016 HUD Letter. To the extent the Debtor argues that the court should not consider the 2016 HUD Letter despite its being explicitly made part of the parties' contract under paragraph 8 of the Mortgage, the court overrules that objection. The 2016 HUD Letter was filed in this case as Doc. 80 together with the related email exchange between the parties' attorneys.

For *bankruptcy* delays beyond the automatic extensions granted above, the mortgagee may request an additional extension of time from HUD via EVARS. In its request, the mortgagee must include documentation that delay was not due to: *(1) the mortgagee's failure to timely notify its bankruptcy attorney; or (2) any failure of the mortgagee's attorney.*

2016 HUD Letter, p.3 (emphasis added).

Under the heading, "Schedule of Attorney Fees," the 2016 HUD Letter stated that:

HUD has updated its Schedule of Attorney Fees for the purpose of calculating the maximum amount that may be reimbursed in an FHA insurance claim for a foreclosure attorney fee, *bankruptcy* clearance fee, possessory action fee, and completion of a deed-in-lieu fee (See Attachment 3). The Schedule of Attorney Fees reflects the customary legal services pertinent to mortgage defaults. Please note that each amount on the schedule is the total maximum reimbursable amount, instead of an hourly rate. The amount claimed for attorney fees cannot exceed the fees charged for work actually performed. Though actual costs for these legal services may potentially exceed fee amounts in the attached schedule, HUD will only reimburse mortgagees up to the amounts on the schedule.

2016 HUD Letter, p. 4 (emphasis added).

Attachment 3 to the 2016 HUD Letter is the "HUD Schedule of Standard Attorney Fees –

Effective 1/1/2016," and footnote 13 thereto, to the extent it is applicable, reads as follows:

(13) This fee assumes that all required procedural steps have been completed. The maximum attorney fee varies based on the chapter under which the *bankruptcy* action is filed. . . . .

- For *Chapter 13 bankruptcies*, the maximum allowable fee is $2,850
  1. *Proof of Claim Preparation & Plan Review is $650*
  2. Objection to Plan is $500
  3. Motion for Relief is $850
  4. Payment Change Notification (if needed) is $50
  5. Notice of Fees, Expenses, and Charges is $100
  6. Post-Stipulation Default / Stay Termination is $50/$200
  7. Response to Final Cure Payment Notice is $50 (agreed)/$500 (objection)

2016 HUD Letter, Att. 3 n.13 (emphasis added).

VIII – <u>Analysis and Conclusions</u>

    (a) *The Mortgage allows Carrington to charge the Debtor for reasonable, necessary attorney's fees incurred in connection with the Debtor's bankruptcy case.*

        As previously discussed, Alabama law recognizes the enforceability of provisions in mortgages that obligate a mortgagor to pay for the attorney's fees incurred by her mortgagee in connection with, *inter alia*, collecting the mortgage debt, foreclosure, and protecting the mortgagee's interest under the mortgage. Similarly, Alabama law recognizes that, if the mortgage contract so provides, the mortgagor's obligation to pay a mortgagee's attorney's fees may be treated as an obligation secured by the mortgage. In paragraph 7 of the Mortgage, the Debtor agreed that if "there is a legal proceeding that may significantly affect [Carrington's] rights in the [Mortgaged] Property (such as *bankruptcy* . . .), then [Carrington] may do and pay whatever is necessary to protect . . . [Carrington's] rights in the [Mortgaged] Property." (emphasis added.) Paragraph 7 goes on to state that "amounts disbursed by [Carrington] under this paragraph shall become an additional debt of [Debtor] and secured by this [Mortgage]."

        A chapter 13 bankruptcy case is a "legal proceeding" and as discussed below, has the potential to significantly and adversely affect a mortgagee's interest in mortgaged property. As a creditor, a debtor's mortgagee is a party to her chapter 13 bankruptcy proceedings, especially, as in this case, when it is scheduled as a creditor who is to be paid under a debtor's plan. Although "attorney's fees" or the like are not specifically listed in paragraph 7 of the Mortgage as expenses Carrington may incur and pass on to the Debtor for reimbursement, there are, in fact, no specific descriptions of expenses enumerated under the "may do and pay" language of paragraph 7. According to the Debtor's interpretation, the failure to specifically include attorney's fees under paragraph 7 should result in attorney's fees for bankruptcy representation never being considered expenses covered by paragraph 7. The court disagrees. Paragraph 7, which authorizes the "Lender

[to] do and pay whatever is necessary to protect the … Lender's rights in the Property" is sufficient to include a mortgagee's attorney's fees incurred in connection with a mortgagor's bankruptcy case. Incurring such fees is reasonable and necessary to protect both the mortgagee's interest in the mortgaged property and, in this case, its FHA insured status.[14]

---

[14] Another bankruptcy court examined almost identical language in a reverse mortgage under Oregon law and noted the following:

> Debtor also alleges in the Complaint that Nationstar is continuing to charge her account for attorney fees postpetition, allegedly in violation of unidentified court orders. The Loan Documents appear to allow Nationstar to add postpetition attorney fees. Paragraph 5 of the DOT provides that if "there is a legal proceeding that may significantly affect the Lender's rights in the Property (such as a proceeding in bankruptcy ...), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property ...." Any amounts paid under Paragraph 5 "shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument." DOT, ¶ 5. Moreover, I am not aware of, and Debtor does not identify, any court order preventing Nationstar from adding postpetition attorney fees to her loan balance.

*Lee v. Nationstar Mortg., LLC*, No. AP 16-3156-PCM, 2017 WL 3394482, at *8 (Bankr. D. Or. Aug. 7, 2017). Similarly, under Texas law construing virtually identical language, another court found that a mortgage lender stated a claim for its attorney fees in defending a wrongful mortgage foreclosure suit:

> Attorneys' fees may only be awarded if the right to attorneys' fees is established by statute or contract. Wells Fargo Bank contends section 7 of the deed of trust creates a right to attorneys' fees. The Bobbitts do not contest section 7 creates a right to attorneys' fees. Section 7 of the deed of trust states that if "there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2. Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower ...." Although this language does not mention attorneys' fees specifically, this language broadly establishes an obligation for the Bobbitts, as Borrower, to reimburse Wells Fargo, as Lender, for monies paid by Wells Fargo in legal proceedings to necessarily protect its rights in the Property. This suit affects Wells Fargo's rights in the Property. Accordingly, the Court finds section 7 of the deed of trust creates a right to attorneys' fees.

*Rose Bobbitt v. Wells Fargo Bank, N.A.*, No. CV H-14-387, 2015 WL 12777378, at *5 (S.D. Tex. May 7, 2015) (internal citations and footnotes omitted).   A federal district court in Georgia held that this language allowed attorney fees for bankruptcy representation:

> The Complaint, in part, alleges that Defendants breached the contract by charging Plaintiff unauthorized fees and expenses, such as attorney's fees in connection with the bankruptcy proceeding and property inspection fees. Plaintiff merely identifies various charges and brazenly asserts that these charges are in violation of the contract. This manner of pleading is unacceptably conclusory. In the Amended Complaint, Plaintiff should—if permitted by Rule 11—articulate how these charges constitute a breach of the contract. Plaintiff should consider whether the terms of the Security Deed contradict Plaintiff's allegations. For example:
>
> > If Borrower [fails to make certain payments, breaches the agreement,] or there is a legal proceeding that may significantly affect Lender's rights in the Property (*such as a proceeding in bankruptcy* ...), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property .... Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.
>
> According to this term, the Security Deed expressly allows Defendants to charge Plaintiff fees in order to protect their interests in a bankruptcy action.

*Hand v. ABN AMRO Mortg. Grp., Inc.*, No. CV 112-176, 2013 WL 6383128, at *8–9 (S.D. Ga. Dec. 5, 2013) (record citations omitted).   Similarly, another bankruptcy court found that the identical language "specifically provides for attorney fees and costs in a bankruptcy proceeding":

> If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.
>
> Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable

*In re Scott*, 229 B.R. 811, 813 (Bankr. E.D. Okla. 1999).   For a discussion of cases that hold the language in the mortgage allowing the lender to "do and pay" whatever is necessary to protect the value of the property authorized the addition of a mortgagee's attorney's fees to the secured obligation whenever such fees were "necessary" but finding that the fees for preparing and filing

Case 17-40777-JJR13    Doc 81    Filed 01/28/19    Entered 01/28/19 10:59:52    Desc Main
Document      Page 13 of 24

Thus, this court concludes that pursuant to Alabama law and the plain language of the Mortgage, the Debtor was obligated to reimburse Carrington for its reasonable and necessary attorney's fees, and that obligation is secured by the Mortgage.[15] But paragraph 7 is not the exclusive expression of the parties' agreement with respect to bankruptcy-related attorney's fees incurred by Carrington.

As mentioned, paragraph 8 of the Mortgage explicitly authorized Carrington to collect HUD-authorized fees and charges. HUD's regulations provide that mortgagees may collect their "attorney's fees and expenses actually incurred in defense of any suit or legal proceeding wherein the mortgagee shall be made a party thereto by reason of the mortgage . . . ." 24 C.F.R. § 203.552(a). And HUD explained in its Mortgagee Letters that attorney's fees and expenses so authorized include those incurred by mortgagees in connection with mortgagors' bankruptcy cases. 2016 HUD Letter; 1993 HUD Letter. In fact, when a mortgagor files bankruptcy to stop a foreclosure, the 2016 HUD Letter specifically requires that "[t]he case [be] promptly referred to a bankruptcy attorney after the bankruptcy is filed." 2016 HUD Letter, p. 3. FHA mortgage insurance may be jeopardized if delays in taking enforcement measures are due to "the mortgagee's

---

a proof of claim were not "necessary" for a mortgage lender to protect its rights in a chapter 13 bankruptcy (at least before the effective date of Rule 3002.1), *see In re Barrett*, 2011 WL 5902780 (Bankr. E.D. N.C. 2011).

[15] In support of her position that it is unreasonable to hire an attorney to prepare and file a proof of claim or to review and advise about the consequences of a chapter 13 plan when the residential mortgage is long-term and not subject to cramdown, the Debtor cites *In re England,* 586 B.R. 795 (Bankr. M.D. Ala. 20189). However, the mortgage in *England* differed materially from the Debtor's Mortgage. The Debtor also cites *In re Clark*, 593 B.R. 661 (Bankr. S.D. Ala. 2018) in support of her argument that the language in paragraph 7 of the Mortgage is ambiguous. While the mortgage in *Clark* appears to be identical to the FHA-form used for the Debtor's Mortgage, the parties in *Clark* did not raise, nor did the court address paragraph 8, which allowed the mortgagee to collect fees and charges authorized by HUD. For that reason, the *Clark* decision is distinguishable, at least in part, from the court's decision in the instant case. Nonetheless, to the extent the *Clark* court held that paragraph 7 was ambiguous, this court respectfully disagrees.

failure to timely notify its bankruptcy attorney." *Id.* HUD not only requires mortgagees to retain bankruptcy attorneys, and authorizes recovery of attorney's fees from bankrupt mortgagors, it also sets limits on the amount of such fees for specific legal services, including, most notably for a chapter 13 case, a maximum of $650 for "Proof of Claim Preparation & Plan Review," some of the same work performed by Carrington's attorneys in the instant case. 2016 HUD Letter, Attachment 3, n. 13. Hence, paragraph 8—separate and apart from paragraph 7—when considered in light of HUD's regulations and Mortgagee Letters, is sufficient to authorize Carrington's recovery of attorney's fees.

(b) *Preparing and filing a residential mortgage proof of claim is not an inconsequential ministerial task.*

The Debtor urges this court to follow decisions by other courts which characterized the review of a proposed chapter 13 plan, and the preparation and filing of a proof of claim, as ministerial tasks and hold that it is *per se* unreasonable for a long-term residential mortgage creditor to charge a debtor for its attorney's fees incurred for those services. *See, e.g., England*, 586 B.R. at 802 ("Filing a proof of claim should merely require transcribing information, which is already available to the lender, to a proof of claim form."); *In re Palmer*, 386 B.R. 875, 878-79 (Bankr. N.D. Fla. 2008) (reducing requested fees for filing proof of claim, reviewing and analyzing the plan, and monitoring for certain post-confirmation events, and finding a fee of $300 was "imminently reasonable in a case where the mortgage is not in default and will be paid directly to the mortgage creditor outside the Plan" in light of the Fannie Mae servicing guidelines then in place); *In re Madison*, 337 B.R. 99 (Bankr. N.D. Miss. 2006) (filing a proof of claim is purely ministerial, and involves only a mathematical computation, while reviewing the loan documents and plan are unnecessary for the preparation of a proof of claim and thus also not allowable as attorney fee items); *In re Marks*, 2005 WL 4799326 (Bankr. W.D. La. 2005) ("While in certain

15

cases, the Court might agree that pre-filing review by an attorney is reasonable, the Court concludes in the instant case that . . . it was  [not] necessary for [the creditor] to hire an attorney to prepare and file its proof of claim" given that the preparation of a proof of claim involved filling in blanks and was not "legal in nature"); *In re Banks*, 31 B.R. 173, 178-79 (Bankr. N.D. Ala. 1982) ("It is both unnecessary and unreasonable to charge a Chapter 13 debtor with attorney's fees for the performance of non-legal services when for the performance of the same services a nonlawyer could not charge or collect such fees.").  Notably, most of the cases on the Debtor's side of this issue were decided before the 2011 amendments to the Code and Rules, and their premise was that filing a proof of claim involved nothing more than putting numbers on a form with no significant legal ramifications, and required no legal analysis of the underlying documents and plan treatment.

In practice, the Debtor's argument could be applied to many legal matters.  Anyone with basic reading and writing skills may be capable of following instructions and completing a form, but it may be unwise to do so when the consequences of noncompliance are significant, and the risks may not be fully understood by a layman.  Nonetheless, although the Mortgage authorized Carrington to hire an attorney to represent its interest in the Debtor's bankruptcy case, the court agrees with the Debtor that if the services associated with the attorney's charges required no legal expertise to protect Carrington's interest, the Debtor should not be responsible for those charges. Hence, the issue becomes whether the Debtor's bankruptcy posed a significant risk to Carrington's interest under the Mortgage, and if so, was that risk allayed as a result of the services performed by Carrington's attorney—reviewing the petition, schedules, and proposed plan; reviewing the Mortgage and Note; reviewing the loan history and accounting; and preparing or inspecting, signing and filing the proof of claim—rather than those same tasks being performed by a non-lawyer.

16

The risks and penalties associated with a flawed proof of claim are not insignificant, particularly for a residential mortgage creditor. Preparing, signing, and filing a proof of claim may not be complicated—the Official Form is readily available online and Rule 3001 states what is required, including attachments and escrow account statement—but the consequences of an incomplete or inaccurate claim travel with the creditor throughout the case and potentially have significant legal and evidentiary repercussions.

First, with few exceptions, if a creditor wants its claim allowed and paid through a chapter 13 plan, it must file a timely proof of claim. Rule 3002(a). A proof of claim filed by a residential mortgage claimant must include detailed information: an itemization of the interest, fees, expenses and other charges, and the amount necessary to cure any default, and should attach copies of the note and mortgage that evidence the debt and security. Rule 3001(c), (d). A mortgage creditor holding an escrow account, such as Carrington in this case, must also file an escrow analysis prepared as of the petition date. Rule 3001(c)(2)(C). If a proof of claim is executed and filed in accordance with the Rules, it constitutes prima facia evidence of the validity and amount of the claim. Rule 3001(f). However, a residential mortgage creditor who fails to follow the mandates of Rule 3001(c) may suffer significant detrimental consequences.

A noncompliant proof of claim is not entitled to a prima facia evidentiary presumption of its validity or amount, but more importantly, a court may:

(i)      Preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or

(ii)     Award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

Rule 3001(c)(2)(D); *see also* Rule 3002.1(i) which sets out identical sanctions for a creditor's failure to provide information required by that Rule. Thus, in a contested matter or adversary

proceeding challenging a residential mortgagee's secured claim after it filed a deficient proof of claim, the claim may not be presumed valid or its amount accurate, and potentially the creditor may be precluded from offering evidence to prove the amount of its claim or the existence and perfection of its security interest, or both, and be required to pay the debtor's attorney's fees. *See, e.g., In re Milliman*, 2018 WL 1475937 (Bakr. D. Kan. 2018) (discussing options and sanctioning creditor by assessing attorney fees under Rule 3001(c)(2)(D)).

Before the penalties imposed under Rule 3001(c)(2)(D) were added to the Rules, an Alabama bankruptcy judge had the following to say about a secured lender's right to recover its attorney's fees:

> [P]reparing and filing a proof of claim is not a simple task. In many instances legal issues need to be considered at that time. Is the creditor oversecured? Is there a co-debtor? What is the district's policy on the proper manner to file a proof of claim? Are there prepetition fees or costs and, if so, should some or all of them be added to the claim? The act of filing a proof of claim is not always a ministerial act. If a creditor does not intend to ever claim any fees or costs and wishes to only claim the prepetition principal balance and accrued interest, the preparation and filing of the claim might be as [sic] ministerial and no counsel needed. In most situations, however, any attorney may properly be used to file a proof of claim if a reasonable fee is charged.

*In re Powe*, 278 B.R. 539, 555–56 (Bankr. S.D. Ala. 2002) (Chief Judge Mahoney discussing the propriety of a car lender's practice of adding to its claim the fees charged by its attorney—determined on a flat fee basis—for bankruptcy work, including filing a proof of claim). The concerns the court raised in the *Powe* case are amplified when the residential mortgage claim ramifications discussed above are implicated, as in the instant case. *See also In re Raygoza*, 556 B.R. 813, 823-824 (Bankr. S.D. Tex. 2016) (analyzing residential mortgage creditor's postpetition fees and agreeing with *In re Rangel*, *infra*, that filing a proof of claim requires some degree of legal analysis, and pointing out that filing a proof of claim binds the creditor to the court's jurisdiction, is tantamount to the filing of a civil complaint, entails a certification that the claim is

warranted in fact and in law and with sufficient evidentiary support, and subjects the filer to potential sanctions in some circumstances, while the act of inserting the numbers on the claim form also entails some aspect of "fill in the form" work that is not the practice of law); *In re Rangel*, 408 B.R. 650, 665-666 (Bankr. S.D. Tex. 2009*), rev'd on other grounds, In re Velazquez*, 660 F.3d 893 (5th Cir. 2011) (filing a proof of claim for a residential mortgage creditor was not "merely ministerial" but rather has "serious and far-reaching implications" including loss of prima facie validity if not prepared correctly, burden-shifting during the claim allowance and objection process that could affect the ability to amend a claim, and that statements in a claim are made under penalty of perjury and filing a proof of claim subjects the creditor to the bankruptcy court's jurisdiction). Because filing a proof of claim is tantamount to the commencement of a civil action, it is a legally significant act that can also open the door to counterclaims that would otherwise be stale under non-bankruptcy statutes, such as the Truth in Lending Act. *See In re Johnson*, 2008 WL 5120114 (Bankr. N.D. Ala. 2008) (discussing significance of filing a proof of claim when the debtor has a defensive counterclaim that may be asserted, and citing *Smith v. American Financial Systems, Inc. (In re Smith)*, 737 F.2d 1549, 1554 (11th Cir.1984); *and Sallings v. Gen. Motors Acceptance Corp., (In re Sallings)*, 357 B.R. 646 (Bankr. N.D. Ala.2007), *aff'd, In re Sallings*, 2008 WL 4831636 (N.D. Ala. 2008)).

The court considered the authorities on both sides of this issue, as well as its own experience in administering chapter 13 cases that involve residential mortgage claims and concludes that preparing, signing, and filing a proof of claim for a residential mortgage creditor is not an inconsequential ministerial task. A residential mortgagee's claim must comply with the mandates of the Code and Rules to avoid significant consequences and may have repercussions not readily apparent to a layman. Accordingly, employing an experienced bankruptcy lawyer for

Case 17-40777-JJR13    Doc 81    Filed 01/28/19    Entered 01/28/19 10:59:52    Desc Main
Document    Page 19 of 24

that purpose is not only reasonable but is prudent.[16]  In addition, the court is not willing to say that HUD's requirements that its insured lenders not only utilize counsel when faced with a bankruptcy filing, but do so on an expedited basis, are *per se* unreasonable, as would be the result if the court adopted the Debtor's argument.

(c) *The expenses incurred for an attorney to review the petition, schedules, plan, and other bankruptcy documents were authorized by the Mortgage.*

As discussed above, the fees charged by Carrington's attorneys were for several services associated with the Debtor's bankruptcy, including a review of the petition, the schedules, and, most critically, the proposed plan.  The Debtor again cites *England* for the proposition that it was unnecessary and thus unreasonable for a residential mortgage creditor to charge a debtor for its attorney's fees incurred in connection with a review of the proposed chapter 13 plan, especially in light of the protection ostensibly afforded by Code § 1322(b)(2).[17]  Subsection 1322(b)(2) states

---

[16] Mortgage creditors are rarely individuals, and they must appear through legal counsel in federal court if they insist upon the treatment the Code anticipates.  *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985) ("The rule is well established that a corporation is an artificial entity that . . . cannot appear *pro se*, and must be represented by counsel.").

[17] Code §§ 1322(b)(2) and (e), when considered together, allow attorney's fees to be added to the mortgage debt if the contract so provides, even if the claim is not oversecured. As the court in *Rangel, supra* (which predates the postpetition fee allowance procedure of Rule 3002.1), explained:

> Creditors with claims secured solely by the debtor's principal residence may recover fees and costs provided for under their loan documents even if they are not oversecured. This right derives from the language of 11 U.S.C. § 1322(b)(2), which allows a Chapter 13 debtor to modify the rights of all secured creditors except for home lenders. Specifically, § 1322(b)(2) provides that a Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." Courts have construed this language to mean that Chapter 13 debtors may not alter the rights of home lenders. *See, e.g., Rake v. Wade,* 508 U.S. 464, 464, 113 S. Ct. 2187, 124 L.Ed.2d 424 (1993) ("Section 1322(b)(2) prohibits debtors from modifying the rights of home mortgage lenders . . .").

that a chapter 13 plan may not modify the rights of a creditor holding "a claim secured only by a security interest in real property that is the debtor's principal residence . . . ."

In an utopian bankruptcy world in which no proposed plan ever violated § 1322(b)(2), or in which no court would dare confirm such a plan, or where if confirmed without the creditor's express approval, such a plan would be unenforceable in any event, the argument that § 1322(b)(2) eliminated any need for a creditor to employ legal counsel to review a proposed plan might be persuasive. But Code § 1327 and binding Eleventh Circuit authority highlight the danger of a naïve reliance on § 1322(b)(2) or any other Code provision that purports to protect a creditor's rights. The Eleventh Circuit's decision in *American Mortgage Co. v. Bateman (In re Bateman)*, 331 F.3d 821 (11th Cir. 2003), should serve as a cautionary tale to any residential mortgage creditor who would rely on what the Code says rather than the legal significance of what the plan provides. In *Bateman,* the bankruptcy court confirmed a plan that did not comply with the requirements of Code §§ 1322 and 1325, but the creditor was nonetheless bound by the plan as confirmed. "The Plan was improperly confirmed because it conflicted with § 1322's mandatory provisions. Had [the creditor] objected to or appealed from the Plan's confirmation, it would have prevailed without question, given the facts presented to us. [The creditor], however, did not do so and § 1327 binds

---

Section 1322(b)(2)'s anti-modification provision is tempered by § 1322(b)(5), which provides that a Chapter 13 plan must "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C § 1322(b)(5). Taken together, these two provisions preserve a home lender's contract rights— including any right to collect fees and costs—during the pendency of the bankruptcy case while simultaneously permitting the debtor to cure prepetition arrearages under the plan.

*Rangel*, 408 B.R. at 663-64 (footnote omitted).

creditors to the provisions of the Plan." *Id.* at 830. While the *Bateman* creditor's lien survived despite the res judicata effect of the improperly confirmed plan, it did so only because there was no separate objection to the secured status of the lien. *Id.* at 832.[18] *See also Nationstar Mortgage, LLC v. Iliceto (In re Iliceto)*, 706 Fed. Appx. 636 (11th Cir. 2017) (per curiam) (Mortgage creditor was bound by the plan even though the bankruptcy court likely committed legal error by confirming the plan that called for the creditor's mortgage to be discharged without full payment). On a similar note, in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010), the Supreme Court held that a creditor was bound by a plan that proposed to pay only principal and discharged interest on a student loan without a finding of undue hardship otherwise required by Code § 523(a)(8) in an adversary proceeding mandated by Rule 7001 to determine the dischargeability of a debt.

These cases illustrate a creditor must be vigilant in examining a proposed chapter 13 plan, and a creditor ignores a plan's provisions that are contrary to the Code at its peril. Mortgage creditors cannot expect bankruptcy judges to be their guardian angels. *Bateman* stands as a stark reminder that chapter 13 plans are in fact filed and confirmed that violate the Code, including the non-modification provisions of § 1322(b)(2). When creditors raise noncompliance with the Code as a defense postconfirmation, the offending debtors can be expected to respond that pursuant to Code § 1327(a), even if the plan violated Code requirements, "[t]he provisions of a confirmed plan

---

[18] At the evidentiary hearing, the standing chapter 13 trustee for this division stated her preference for mortgage creditors to be represented by counsel because bankruptcy is not merely an administrative process but is instead a judicial process. Participation by attorneys representing mortgage lenders is beneficial to the overall chapter 13 process, not the least of which is providing her with a readily available contact source for information regarding the mortgage debt, which often is the most critical aspect of a debtor's plan. She also stated that she agreed with the Debtor that the language of paragraph 7 of the Mortgage was ambiguous.

bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."

This court is not willing to say that because a plan *should not* violate the Code, it is unnecessary, and thus unreasonable, for a creditor to employ an attorney to review a proposed plan and determine whether it nonetheless violates the intended protection afforded by the Code. As *Bateman* demonstrates, the confirmation process can trump the Code. Accordingly, as with preparing and filing the POC, it was reasonable and necessary for Carrington to employ an attorney to review the Debtor's plan and other bankruptcy related documents and to consider their proposed treatment of Carrington's interest in the Mortgaged Property.[19]

(d) *The fees charged for bankruptcy-related work were reasonable.*

The Debtor challenges the reasonableness of the amount of the fees charged by Carrington's attorneys. The court considered the legal work described by Carrington's attorneys for which their firm charged a fee of $300 in each chapter 13 case. Although the attorneys charged a flat fee for their work, the court is convinced that the time expended and legal expertise required to perform the tasks described by Carrington's attorneys justified the $300, and was comparable with what other attorneys charge in this district for similar work. Thus, the fee is reasonable under Alabama law, and notably was less than half the maximum fee authorized by HUD for preparing a proof of claim and plan review. 2016 HUD Letter, Attachment 3, n. 13.

---

[19] If the Debtor's argument were expanded, an equally compelling argument could be made that filling out a petition, schedules, and chapter 13 plan require nothing more than taking numbers provided by the debtor and inserting them into forms and computer programs, for which no legal expertise is needed. The flaw in that argument is patently clear when viewed from the point of view of debtors' counsel. It is the legal analysis and advice underlying the "filling out of the forms" together with the consequences that flow from filing the petition, schedules, and plan that justify the employment of debtors' counsel and the payment of their fees. The same logic applies to residential mortgage lenders' use of counsel to prepare, sign, and file proofs of claim and review and analyze a plan's treatment for their clients.

(e) *Fees for the First Case may not be included in the Postpetition Fee Notice.*

Finally, there is an issue—not specifically raised by the Debtor—regarding the $300 included in the Postpetition Fee Notice for attorney's fees incurred with respect to the First Case. Rule 3002.1 allows a holder of a residential mortgage claim to seek the recovery of its "fees, expenses, and charges (1) that were incurred in connection with the claim *after* the bankruptcy case was filed [emphasis added] . . . ." Fees charged in the First Case were necessarily incurred before the instant case was filed and should not have been included in the Postpetition Fee Notice. It would have been appropriate for the attorney's fees incurred in the First Case to be included in the prepetition fees, expenses, and charges itemized in the POC, but not in the Postpetition Fee Notice.

IX – Order

For the reasons stated above, it is hereby ORDERED that the attorney's fees included in Carrington's Postpetition Fee Notice (doc. filed 8-31-17, claim 8) incurred in respect to the instant case, are allowed as proper postpetition expenses to the extent of $300; all amounts claimed in the Postpetition Fee Notice exceeding $300 are disallowed.[20]

So done and ordered this 28th day of January 2019.

/s/ James J. Robinson
JAMES J. ROBINSON
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[20] Neither party raised the issue of whether the attorney's fees incurred by Carrington with respect to the First Case, although not allowed under the Postpetition Fee Notice, may nonetheless be included in the sums claimed in the POC. Since Carrington included the fees associated with the First Case in the Postpetition Fee Notice, the court assumes those same fees were not included in the amounts claimed in the POC. Assuming they were not included in the POC, this Opinion and Order does not decide the issue of whether they may be added via amendment to the POC.